# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

William Hicks,
     Petitioner

   vs.                          Case No. 1:05cv774
                                     (Spiegel, S.J.; Black, M.J.)

Deb Timmerman-Cooper,
     Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the London Correctional Institution in London, Ohio, has filed with the assistance of counsel a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's "Answer/Return Of Writ," and petitioner's "traverse" in reply to the return of writ.  (Docs. 1, 3, 9).

## Procedural Background

In the instant habeas petition, petitioner challenges his July 23, 2002 conviction and prison sentence totaling nine (9) years following a jury trial in the Butler County, Ohio, Court of Common Pleas, where he was found guilty on the following criminal charges:  twenty-one counts of theft by deception in violation of Ohio Rev. Code § 2913.02(A)(3); one count of attempted theft by deception in violation of Ohio Rev. Code §§ 2913.02(A)(3) and 2923.02(A); and one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1).  (Doc. 1; *see also* Doc. 3, Ex. 1 (Counts 10-32) & Exs. 2, 5).  The

facts giving rise to petitioner's conviction and sentence, as summarized by the Ohio Court of Appeals, Twelfth Appellate District, in its direct appeal decision, are as follows:[1]

> Timothy Hicks, Daniel Hicks, and appellant are brothers.  On December 14, 2001, appellant was indicted on one count of engaging in a pattern of corrupt activity in violation of . . . the Ohio RICO (Racketeer Influenced and Corrupt Organizations) Act, one count of attempted theft by deception . . ., and 21 counts of theft by deception ... involving 18 customers and three commercial suppliers.  Timothy was indicted on one count of engaging in a pattern of corrupt activity and 22 counts of complicity to theft by deception.  Daniel was indicted on one count of theft by deception, one count of complicity to theft by deception, one count of forgery, and six counts of passing bad checks.  Daniel pled guilty to most of the charges and was sentenced accordingly.  Appellant and Timothy were jointly tried before a jury in May 2002.  Timothy testified at trial, appellant did not.  Daniel testified at their trial as a witness for the state.

> Testimony at trial revealed that in 2000, appellant was the owner of APF Buildings, Inc., a construction company building pole barns and garages.  Hired in May 2000 as a laborer, Daniel quickly became a salesperson for APF where he worked until he was fired mid-September 2000.  Hired in 1999, Timothy worked in the field until APF went out of business on January 26, 2001.  From February to September 2000, APF had a business account with Firstar Bank.  Unlike Daniel, Timothy was a co-signatory on the account.  A debit card was issued to appellant in February, and again in June.  A debit card was eventually issued to Timothy in June.  In September 2000, appellant closed the account with Firstar Bank and opened a business account at Fifth Third Bank where both he and Timothy were issued a debit card.

---

[1]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Pursuant to this provision, the Ohio Court of Appeals' factual findings quoted herein are presumed correct absent petitioner's presentation of "clear and convincing evidence" to the contrary.

The indictment against appellant and his brothers stemmed from a continuing course of conduct in 2000 and through January 26, 2001 during which APF entered into contracts with several customers to build pole barns and other structures on their property. Upon signing the contract, the customers were required to pay a 20 percent deposit. In most instances, the customers were subsequently asked, several weeks or months later, to pay an additional amount for materials. Some customers received some materials, others never received anything. Construction starting dates were systematically delayed numerous times. Phone calls were not returned. When customers could reach him on the phone, each time appellant promised them that their building would soon be built. The barns and other structures were never built. In January 2001, most customers received a letter from an attorney informing them that effective January 26, 2001, APF was no longer in business. The customers were never refunded their money. Their losses varied from $1,680 to $19,832. With regard to the commercial suppliers, the indictment stemmed from a course of conduct in 2000 during which APF did not pay the suppliers for the materials delivered on APF construction sites.

Many customers testified that after September 2000, appellant blamed the construction delays and APF's problems on Daniel. At appellant's trial, Daniel admitted writing and turning in several phony contracts, depositing bad checks in the business account to cover the phony contracts, collecting money from four customers, allegedly for materials, to cover the bad checks, failing to turn in a legitimate contract, and collecting a check from a customer for a barn never built and cashing it for himself. According to Daniel, he was ordered by appellant to keep selling despite being behind with the current contracts, and to tell unhappy customers "something, anything." Daniel eventually confessed to his brothers mid-September 2000.

While Daniel was employed by APF from May to September 2000, testimony at trial revealed that contracts for customers were entered from March 2000 to January 2001. No structure was ever built by APF under those contracts, including under a March 2000 contract. Following Daniel's termination, APF continued to enter into contracts and collect money from customers, including in January 2001, the

very month APF went out of business.  Indeed, a customer testified
that she entered into a contract with APF in December 2000 and made
a down payment of $4,250.  The father was asked to pay an additional
$9,500 for materials on February 1, 2001 even though APF was no
longer in business as of January 26, 2001.

Testimony also revealed that despite APF's problems following
Daniel's termination, appellant and Timothy kept paying themselves
$1,200 a week in wages.  Likewise, following Daniel's termination
and as he had done from February to September 2000, appellant kept
using the business account for seemingly non-business expenses such
as a National Rifle Association membership; residential mortgage
payments; cash withdrawals ranging from $100 to $5,500; purchases
at a jewelry store, an electronics store, and a furniture store; and
expenses incurred in Minnesota while attending a family wedding.

On May 30, 2002, a jury found appellant guilty on all 23 counts.
Timothy was acquitted on all counts.  Appellant was sentenced
accordingly and ordered to pay restitution in the amount of
"$111,528.36  payable to said victims; $67,500.00 payable to First
Star [sic] Bank; and $100,000.00 payable to various commercial
suppliers."

*(State v. Hicks,* No. CA2002-08-198, 2003 WL 23095414, at *1-2 (Ohio Ct. App.
Dec. 31, 2003) (unpublished); *see also* Doc. 3, Ex. 9, pp. 1-5.)

Petitioner was represented at trial by retained counsel, Michael O'Hara.
Prior to sentencing, petitioner obtained new counsel, J. Gregory Howard, who filed
a motion for new trial on petitioner's behalf.  In the motion, it was claimed that
petitioner had been deprived of a fair trial based on the following errors and
omissions amounting to ineffective assistance on O'Hara's part:

Michael O'Hara . . . failed to subpoena witnesses material to the
defendant's defense, failed to appear at pretrial hearings in this matter,
failed to take evidence from the defendant and disclose that evidence
to the prosecution in support of his defense for fear that such evidence
may expose Mr. Hicks to civil liability for warranty problems related
to other work performed prior to the time frame of the indictment in

4

this matter, [and] failed to disclose to Mr. Hicks the nature of any plea negotiations and offers made by the state of Ohio. . . .

(Doc. 3, Ex. 3).  It was further alleged:

> Had Mr. Hicks had competent trial counsel, the outcome of this matter would have been different, as Mr. Hicks may have even entered a plea to the offer made, had he known about it as he would have been able to make an intelligent and informed decision about what was in his best interest.

(*Id.*).

Howard attached to the new trial motion the supporting affidavits of petitioner and David Brewer, Timothy Hicks' attorney during the joint trial proceedings.  Brewer averred in pertinent part:

> 5.  That during the pendency of this matter, numerous discussions were held with the Prosecuting Attorney's office in regard to a possible plea for both my client and William Hicks;

> 6.  That at one point in time, according to my notes, a plea offer was extended to both my client and William Hicks;

> 7.  That in William Hicks' case, a plea offer was made that if Mr. Hicks pled to an amended count, being a felony of the second degree, that all 22 other charges against Mr. William Hicks would be nolled;

> ****

> 9.  That during the trial, it appeared to me that Michael O'Hara, trial counsel for William Hicks, did not seem prepared for trial;

> 10.  That during these proceedings, Mr. O'Hara appeared to be seriously lacking in, what I would categorize as, basic litigation skills;

> 11.  That it appeared that Mr. O'Hara did not have the skill or experience to handle a case of this nature based upon my involvement

5

with this case;

\*\*\*\*

13.  That Mr. O'Hara, for reasons unknown, did not subpoena a witness on behalf of his client, Mr. Brandon Voelker, who, based upon my conversations with Mr. O'Hara, was a critical witness to his client's defense[.]

*(Id.,* "Affidavit of David Brewer").

Petitioner stated in his affidavit that he had not been informed of the State's plea offer until "Mr. Howard mentioned this to me on June 11, 2002," and that "throughout my trial, my attorney kept telling me that I had nothing to worry about and that we had at least 4-5 of the jurors on our side."  (*Id.,* "Affidavit of William Hicks").  Petitioner further averred:  "[F]rom speaking with my new counsel, Gregory Howard, it is my understanding that a plea bargain had been extended to my counsel, which, had I accepted, would have significantly reduced the possibility of any jail time in this matter."  (*Id.*).

The trial court did not hold an evidentiary hearing on petitioner's motion for new trial.  After hearing counsel's oral arguments, the court overruled the motion.  (*Id.,* Ex. 4).  In so ruling, the court reasoned in relevant part on the record:

As to the plea bargaining issue, . . . first of all, there's no evidence before this Court that if the defendant knew about the plea bargaining offer, that he was willing to accept it.  And I think that's very important in this particular case.

I will say that there was a discussion that occurred between this Court and the prosecuting attorney's office and Mr. O'Hara about whether or not this defendant, if he did plead guilty to the racketeering charge, how the Court would treat it.  And the Court indicated [to] him, that if Mr. O'Hara, that if this defendant pled guilty to a racketeering charge, he would be treated harshly by this Court.  So there is no misunderstanding about that. . . .  I was likely to impose a severe sentence, which would approach the maximum sentence.  So I want to make sure that was understood.

6

Second or last or next is the Court wants to indicate that the Court is reminded that the evidence in this particular case was overwhelming, that in my mind, the evidence of guilt was clear-cut, and that even if you can get past the first prong of the test, I don't believe that this defendant under any circumstances would meet the second prong of the test[] . . . about the ineffective assistance [as set forth in *Strickland v. Washington,* 466 U.S. 668 (1984)].

****

As far as the satisfied customer not being called, first of all, I would suggest that if anybody sat through six days of this trial, that that was an issue that was frequently raised, that there were many satisfied customers out there, and that a lot of the delays in this particular case were not due to an attempt to defraud the victims, but were due to unrelated matters such as the volume of cases, or the volume of buildings pending, and were due to weather delays, et cetera, et cetera, that there was lots of discussion about that.

. . . . So I think that if had we – the Court been presented with witnesses who would come in here and say, I'm a satisfied customer, I probably would have permitted that, but probably not very much because I consider it somewhat cumulative, and to some extent, irrelevant to the issues in front of the Court. So I would have probably restricted that testimony anyway.

. . . .So bottom line is, I believe that this defendant received a fair trial....

(*Id.,* Tr. 39-44).[2]

After petitioner was sentenced on July 23, 2002, Howard filed a notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. 6). New counsel, William Gallagher, filed an appellate brief on petitioner's behalf asserting

---

[2] In overruling petitioner's new trial motion, the trial court did not address the issue raised by David Brewer in his supporting affidavit concerning O'Hara's purported failure to subpoena Brandon Voelker as a witness "critical" to petitioner's defense.

7

four assignments of error.  (*Id.,* Ex. 7).  In the first assignment of error, petitioner claimed in part that he was denied his right to effective assistance of counsel when his trial counsel "failed to inform [petitioner] of a plea offer in this case" and failed to subpoena petitioner's "civil lawyer" and satisfied APF customers as defense witnesses.  (*Id.,* pp. 4-5, 9-11, 13).

On December 31, 2003, the Ohio Court of Appeals overruled all but one of petitioner's assignments of error relating to a fine that had been imposed, and affirmed the trial court's judgment of conviction.[3]  (*Id.,* Ex. 9).  Citing and applying the standard of review enunciated by the Supreme Court in *Strickland*, the court of appeals rejected petitioner's ineffective assistance of trial counsel claim, reasoning in relevant part as follows:

> Appellant first argues that his counsel was ineffective because he never informed him of a prosecutor's plea offer.  After the trial, appellant hired a new attorney who moved for a new trial based upon trial counsel's ineffective assistance of counsel.  In an affidavit, appellant stated that following his trial, he learned that a plea offer, to amend the count of engaging in a pattern of corrupt activity from a first to a second degree felony and to nolle the remaining 22 counts, had been extended to his trial counsel, but that he had never been informed of the plea offer.  Appellant also stated that if accepted, the plea offer "would have significantly reduced the possibility of any jail time."
>
> The state admitted that a plea offer had been made to appellant's trial counsel the week before trial but that the offer was not as generous as appellant believed.  According to the state, appellant's trial counsel indicated he had discussed the plea offer with appellant but that appellant maintained his innocence, as he had done throughout the proceedings.
>
> A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth

---

[3]  Specifically, the Ohio Court of Appeals vacated the portion of petitioner's sentence requiring petitioner to pay $67,500 in restitution to Firstar Bank, because petitioner was "never indicted with regard to [that] bank's loss."  (*See* Doc. 3, Ex. 9, pp. 19-23).

Amendment and satisfies the deficient performance prong of the *Strickland* test. . . .

However, even if appellant's trial counsel's performance was deficient, appellant failed to show that he was prejudiced as a result. To establish prejudice, appellant must show he would have accepted the plea offer had it been communicated to him. . . . In his affidavit, appellant never alleged that had he been informed of the plea offer, he would have accepted it. In denying the new trial motion, the trial court noted that it "conveyed directly to [appellant's trial counsel] that if [appellant] *** admitted that he was engaging in racketeering, which was the nature of the plea bargaining discussion, that [it] would treat that quite harshly. [The court] was likely to impose a severe sentence, which would approach the maximum sentence." Appellant's ineffective assistance claim regarding the plea offer, therefore, does not succeed under the *Strickland* test.

****

Finally, appellant argues his trial counsel was ineffective because he ... failed to subpoena the attorney for APF to testify on behalf of appellant, [and] . . . failed to have satisfied customers testify on behalf of appellant[.] . . .

****

. . . . With regard to satisfied customers, testimony was presented at trial that there were buildings built. Testimony was also presented by an investigator for the Ohio Attorney General Office, and by a customer who had contacted eight to ten references before contracting with APF and found satisfied customers. Appellant's foregoing ineffective assistance claim[], therefore, do[es] not meet the prejudice prong under the *Strickland* test.

****

Finally, with regard to trial counsel's failure to subpoena APF's attorney to testify on behalf of appellant, the record shows that

9

appellant and Timothy consulted the attorney with regard to APF's problems for the first time during the week of January 15, 2001.  On January 17, 2001, appellant and Timothy wrote a $500 check to the attorney.  By letter dated the next day, APF's newly hired attorney sent letters to customers notifying them that effective January 26, 2001, APF would no longer be in business.  In light of the foregoing, and given the evidence in this case, we find that appellant failed to show that there is a reasonable probability that the outcome of the proceeding would be different had APF's attorney been subpoenaed to testify.  We therefore find that appellant did not receive ineffective assistance of counsel. . . .

(*Id.,* pp. 5-8, 10-12) (case citations omitted).[4]

On November 3, 2003, during the pendency of petitioner's direct appeal to the Ohio Court of Appeals, petitioner's appellate counsel filed a petition for post-conviction relief on petitioner's behalf with the Butler County Common Pleas Court.  (*Id.,* Ex. 14).  In the petition, petitioner again presented claims challenging his trial counsel's performance.

Specifically, petitioner alleged, as he had on direct appeal, that his trial attorney was ineffective because he failed to inform petitioner of the State's plea offer and failed to call witnesses and introduce evidence favorable to the defense.  (*Id.,* pp. 4-14).  Petitioner referred to the affidavits previously submitted in support of his new trial motion as evidence supporting his claim regarding the plea offer.  (*Id.,* pp. 4-5).

With respect to his claim regarding the failure to call witnesses, petitioner attached as additional evidentiary support thirteen affidavits from various "satisfied customers" of APF, a new affidavit from petitioner, and the affidavit of Brandon Voelker.  (*Id.,* pp. 6-14 & Exs. A-O).  Of particular significance, Voelker testified in his affidavit regarding petitioner's expression of his "genuine desire to satisfy all the contracts" and lack of criminal intent "to take money and not perform on the

---

[4] Petitioner filed a timely *pro se* appeal from this decision to the Supreme Court of Ohio. (Doc. 3, Exs. 10-11).  On April 28, 2004, the state supreme court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 13).

contracts;" his own willingness to testify at trial on petitioner's behalf without "any condition on my appearance as a witness;" and the failure of petitioner's trial attorney to contact him "to appear in the trial of this matter." (*Id.,* Ex. O).

In the post-conviction petition, petitioner also raised a new ineffective assistance of counsel claim, alleging that his trial attorney prevented him from testifying at trial in his own defense. (*Id.,* pp. 14-15). In support of this claim, petitioner averred in his attached affidavit that he spoke with counsel "about my need to testify in this matter" because "my testimony was vital and related to the jury that I never had any intention of keeping any funds that were given to us without performing on the contracts." (*Id.,* Ex. A, ¶ 22). Petitioner further testified:

> 23. Mr. O'Hara told me that I would not be able to testify in this case, that the trial was taking much longer than anticipated and that the Judge had already expressed anger at Mr. O'Hara for the length of the trial.

> 24. Mr. O'Hara told me that if we had to take time for my testimony that the Judge would potentially take his anger out on me and make it very clear to the jury that it was our fault the case was taking so long.

> 25. I was never told that I had an absolute right to testify. I had always thought it was up to my attorney as to what witnesses to call. Had I known or been told by Mr. O'Hara that I had an absolute right to testify, I would have objected to Mr. O'Hara's failure to call me as a witness.

(*Id.,* Ex. A).

On April 1, 2004, the Butler County Common Pleas Court dismissed the petition for post-conviction relief on the ground that petitioner's claims were barred from review as *res judicata*, because they either were raised or could have been raised in the direct appeal proceedings. (*Id.,* Ex. 17). In its decision, the court also denied petitioner's request for an evidentiary hearing because petitioner failed to "meet his burden" of showing that the additional evidence, presented in affidavits "outside the previous record on appeal," was "more than marginally significant and advances his claim beyond a mere hypothesis that the result would

11

be different if this evidence had been submitted previously." (*Id.,* p. 8). The court reasoned:

> Much of what is contained in Defendant's postconviction affidavit is duplicative of his affidvit in support of a new trial, and that which the Defendant had not already stated (e.g., that counsel was ineffective respecting his right to testify) could have been raised in the new trial motion, but was not. . . . Moreover, the Court finds the Defendant's post-hoc statements concerning his trial counsel to be self-serving and lacking the necessary credibility to warrant further proceedings herein. Likewise, the affidavits of satisfied customers of APF and attorney Brandon Voelker are cumulative to information already contained in the record which was previously considered on direct appeal. . . .

(*Id.,* pp. 8-9) (case citation omitted).

Petitioner's counsel timely appealed to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Exs. 18-19). On March 21, 2005, the Ohio Court of Appeals affirmed the denial of petitioner's post-conviction petition on *res judicata* grounds, reasoning in relevant part:

> . . . .Aside from the allegation that he was prevented from testifying at trial, appellant raised each of these alleged deficiencies in his direct appeal, and this court rejected each claim. . . . Appellant is consequently barred by res judicata from raising these issues in his petition for post-conviction relief. Appellant's contention that his trial counsel was ineffective for not permitting him to testify is an issue that could have been raised in his motion for a new trial, and is likewise barred by res judicata. . . .
>
> Additionally, the evidence presented outside the record does not advance appellant's ineffective assistance claim beyond "mere hypothesis." The affidavits of satisfied customers that appellant presented along with his postconviction relief petition are merely cumulative to evidence already in the record, and considered by the court in his direct appeal. Voelker[']s affidavit is similarly cumulative to evidence contained in the record, and in considering appellant's

12

direct appeal, this court concluded that appellant failed to demonstrate that the outcome of the trial would have been different had Voelker been called to testify. . . .

(*Id.,* Ex. 21, pp. 4-5).

Petitioner filed a *pro se* appeal to the Supreme Court of Ohio, which declined jurisdiction to hear the case and dismissed the appeal "as not involving any substantial constitutional question" on July 13, 2005.  (*Id.,* Exs. 22, 24).

On November 29, 2005, William Gallagher, who represented petitioner in the state direct appeal and post-conviction proceedings, filed the instant petition for writ of habeas corpus on petitioner's behalf.  (Doc. 1).  In the petition, petitioner alleges that his Sixth Amendment right to the effective assistance of counsel was violated when his trial attorney (1) failed to inform him of the State's plea offer; (2) prevented him from testifying in his own defense at trial; and (3) "failed to call witnesses and introduce evidence supporting innocence."  (*Id.,* p. 5).

In the return of writ filed in response to the petition, respondent contends that petitioner has waived the claim alleging that his counsel prevented him from testifying at trial due to his procedural default in the state courts.  (Doc. 3, Brief, pp. 9-10).  Respondent further argues that petitioner has not shown that the state court of appeals' decision on direct appeal rejecting petitioner's remaining ineffective assistance of counsel claims on the merits was "contrary to or involved an unreasonable application of clearly established federal law" under 28 U.S.C. § 2254(d).  (*Id.,* pp. 11-19).

## OPINION

### A.  Petitioner Has Waived The Claim That He Was Prevented<br>By His Trial Counsel From Testifying At Trial

Respondent argues that petitioner has waived the ineffective assistance of counsel claim stemming from the allegation that his trial attorney refused to allow him to testify at trial, because he did not raise the issue to the state courts at any time prior to the filing of his petition for state post-conviction relief.  (Doc. 3, Brief, pp. 9-10).  Although petitioner did assert the claim in his state post-conviction petition, the Ohio courts did not address its merits, but instead found that the claim was barred from review under Ohio's *res judicata* doctrine.  (*See id.,* Exs. 14, 17, 21).

It is well-settled that, on federal habeas corpus review of a state conviction, the district court may be barred from considering an issue of federal law if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state court decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Wainwright v. Sykes,* 433 U.S. 72, 86-87 (1977); *see also McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985).

An adequate and independent finding of procedural default will preclude federal habeas review of a constitutional claim unless the petitioner can demonstrate cause for the default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Sykes,* 433 U.S. at 87.

Such a procedural default, however, does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (*per curiam*); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993).

Here, the Ohio Court of Appeals was the last state court to render a reasoned

14

decision addressing petitioner's ineffective assistance claim, which was raised for the first time in his post-conviction petition filed during the pendency of the direct appeal proceedings. The court "clearly and expressly" relied on an independent state procedural ground when it determined that the claim was barred from review under Ohio's *res judicata* doctrine because petitioner could have raised it in his motion for new trial filed prior to sentencing, and thus on direct appeal from his conviction and sentence as he had with respect to his other ineffective assistance of counsel claims.[5] (*See* Doc. 3, Ex. 21, pp. 4-5).

Application of Ohio's *res judicata* doctrine to claims raised for the first time in post-conviction petitions has long been considered an "adequate" state ground "justifying foreclosure of constitutional claims in habeas." *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 628 (6th Cir. 2003); *Coleman v. Mitchell,* 268 F.3d 417, 427 (6th Cir. 2001) (citing *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994), and *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991)), *cert. denied,* 535 U.S. 1031 (2002); *Palmer v. Bagley,* No. 1:00-CV-882, 2005 WL 3965400, at *25 (S.D. Ohio Dec. 16, 2005) (Merz, M.J.) (unpublished) (and numerous cases cited therein, including *State v. Cole,* 443 N.E.2d 169 (Ohio 1982), *State v. Ishmail,* 423 N.E.2d 1068 (Ohio 1981), and *State v. Perry,* 226 N.E.2d 104 (Ohio 1967)), *adopted,* 2006 WL 1027733 (S.D. Ohio Apr. 17, 2006) (Rose, J.) (unpublished).

Petitioner's counsel contends in the "traverse" brief that *res judicata* was an inadequate procedural bar to apply in this case because petitioner's otherwise-defaulted ineffective assistance of counsel claim is based on evidence outside the record and thus could not have been raised on direct appeal. (*See* Doc. 9, pp. 8-10). This argument fails to take into account that petitioner had asserted other ineffective assistance of trial counsel claims, which were supported by additional evidence not presented at trial, in his motion for new trial filed after the jury had reached its verdict but prior to sentencing, which became part of the record for review on direct appeal.

---

[5] The Supreme Court of Ohio's later unexplained decision declining jurisdiction to hear the case and summarily dismissing petitioner's appeal "as not involving any substantial constitutional question" (*see* Doc. 3, Ex. 24) must be presumed to rest on the same procedural default. *Cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Ylst,* 501 U.S. at 803-04, and *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995)), *cert. denied,* 531 U.S. 1089 (2001).

As in post-conviction proceedings under Ohio Rev. Code § 2953.21, a criminal defendant in Ohio is permitted to file a motion for new trial under Ohio R. Crim. P. 33 for "causes affecting materially his substantial rights," supported by additional evidentiary materials, where an evidentiary hearing may be granted in the trial court's discretion. *See, e.g., State v. Johnson,* 799 N.E.2d 650, 651-52 (Ohio Ct. App. Dist. 8 2003), *appeal dismissed,* 805 N.E.2d 540 (Ohio 2004); *State v. Mincy,* No. C-060041, 2007 WL 866215, at *1 (Ohio Ct. App. Dist. 1 Mar. 3, 2007) (unpublished) (and numerous cases cited therein); *cf. State v. Conway,* 842 N.E.2d 996, 1022 (Ohio) (evidentiary hearing held by trial court on motion for new trial alleging that prosecutors intimidated spectators who supported defendant), *cert. denied,* 127 S.Ct. 122 (2006).[6]  With the assistance of new counsel, petitioner in fact utilized the procedure permitted under Ohio R. Crim. P. 33 to assert claims before he was sentenced challenging his trial counsel's performance.  Therefore, the claims that were presented in the new trial motion, including the "new" evidence in the form of affidavits attached to the motion, were all part of the record subject to review on direct appeal.

It is well-settled in Ohio that:

> Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment.

*State v. Szefcyk,* 671 N.E.2d 233, 235 (Ohio 1996) (emphasis in original) (quoting

---

[6]  *See also State v. Barton,* No. CA2005-03-036, 2007 WL 731409, at *3-4 (affirming denial of new trial motion after evidentiary hearing held on claim based on "newly discovered evidence") (Ohio Ct. App. Dist. 12 Mar. 12, 2007) (unpublished); *State v. McMullen,* Nos. CA2005-09-414, CA2005-10-427, CA2005-10-429, 2006 WL 2536268, at *5-7 (Ohio Ct. App. Dist. 12 Sept. 5, 2006) (unpublished) (upholding the denial of a new trial after an evidentiary hearing, and rejecting ineffective assistance of trial counsel claim in part because "appellant was granted an evidentiary hearing on the motion for a new trial in which his opportunity to present new evidence was unfettered").

and reaffirming *State v. Perry,* 226 N.E.2d 104, syllabus ¶9 (Ohio 1967)).

As the Ohio Court of Appeals determined, petitioner could have raised the ineffective assistance of counsel claim stemming from the allegation that he was prevented from testifying at trial in his motion for new trial along with his other claims of ineffectiveness by trial counsel. Therefore, the undersigned concludes that, contrary to petitioner's contention, such claim fell within the firmly-established and regularly-followed *res judicata* rule as a matter, like petitioner's other un-waived ineffective assistance of counsel claims, that could have been raised on direct appeal.

The Court is barred by the "adequate and independent state ground" doctrine from reviewing petitioner's claim that his trial counsel provided ineffective assistance by preventing him from exercising his right to testify at trial. Petitioner has waived such claim for relief absent a showing of cause and prejudice, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any explanation for his failure to assert the defaulted ineffective assistance of counsel claim in his motion for new trial filed prior to sentencing. He also has not demonstrated that a fundamental miscarriage of justice will occur if his claim is not considered, or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, in the absence of a showing of "cause" or that a fundamental miscarriage of justice will occur if petitioner's defaulted ineffective assistance of trial counsel claim is not considered by this Court, the undersigned respectfully **RECOMMENDS** that petitioner's claim that his trial counsel was ineffective in preventing him from testifying at trial be **DISMISSED** with prejudice on the procedural ground that petitioner has waived such claim for relief due to his procedural default in the state courts.

### B. Petitioner Is Entitled To An Evidentiary Hearing On His Remaining Ineffective Assistance Of Trial Counsel Claims

In his remaining claims challenging his trial counsel's performance, petitioner alleges that defense counsel failed to inform him of a plea offer extended by the prosecutor and failed to call certain key witnesses to testify on petitioner's behalf at trial. As discussed *infra* pp. 18-24, it appears that an evidentiary hearing is required to develop the facts underlying petitioner's remaining claims before this Court can adjudicate their merits.

As an initial matter, the Court must determine whether the statutory provision governing evidentiary hearings, which is embodied in 28 U.S.C. § 2254(e)(2), applies to these claims. Under that provision,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the [United States] Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

In *Williams v. Taylor,* 529 U.S. 420, 432 (2000), the Supreme Court held that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." In so ruling, the Court observed that the "opening clause of § 2254(e)(2) codifies the threshold standard of diligence" previously established by the Supreme Court in *Keeney v. Tamayo-Reyes,* 504 U.S. 1 (1992), applicable to "prisoners who are at fault for the deficiency in the state-court record [to] ... satisfy a heightened standard to obtain an evidentiary hearing." *Williams,* 529 U.S. at 433-34.

Diligence within the meaning of the "opening clause" of § 2254(e)(2) "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Williams,* 529 U.S. at 435; *see also Satterlee v. Wolfenbarger,* 374 F.Supp.2d 562, (E.D. Mich. 2005), *aff'd & remanded on other grounds,* 453 F.3d 362 (6th Cir. 2006), *cert. denied,* 75 U.S.L.W. 3397, 3492, 3497 (U.S. Mar. 19, 2007) (No. 06-977). Therefore, a petitioner who was diligent in seeking a state evidentiary hearing, but whose requests were denied in the state courts, has not failed to develop the facts underlying his claim, and "will be excused from showing compliance with the balance of [§ 2254(e)(2)'s] requirements." *Williams,* 529 U.S. at 437; *see also McFarland v. Yukins,* 356 F.3d 688, 712 (6th Cir. 2004); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002).

Here, petitioner was diligent in seeking to develop the facts underlying his remaining ineffective assistance of counsel claims, which he presented in his motion for new trial with supporting affidavits filed prior to his sentencing and again attempted to develop by way of his state post-conviction petition filed during the pendency of his direct appeal in the Ohio Court of Appeals. *Cf. McFarland,* 356 F.3d at 712; *Greer,* 264 F.3d at 681.[7] Petitioner presented his claims at the first available opportunity to the state courts. Indeed, he could not have presented them at any earlier point in the trial proceedings, because he was represented then by the attorney whose conduct became the subject of attack. Therefore, the heightened standard set forth in 28 U.S.C. § 2254(e)(2) is inapplicable.

The district court has the discretion and "inherent authority" in habeas cases "to order evidentiary hearings to settle disputed issues of material fact." *Sawyer v. Hofbauer,* 299 F.3d 605, 609-10 (6th Cir. 2002) (quoting *Abdur'Rahman v. Bell,*

---

[7] *See also Hall v. Russell,* No. 1:02-CV-34, 2006 WL 1982856, at *3 (S.D. Ohio July 13, 2006) (unpublished) (Spiegel, S.J.) (remanding for evidentiary hearing on claim that the "government withheld evidence in [petitioner's] favor, and destroyed such evidence," after finding that petitioner did "not fall within [§] 2254(e)(2)'s opening clause" because he was not at "fault" in failing to develop the facts underlying such claim in the state courts).

226 F.3d 696, 706 (6th Cir. 2000), *cert. denied,* 534 U.S. 970 (2001)).[8]  Because
§ 2254(e)(2) does not apply here, petitioner is entitled to such a hearing if it is
determined that he has alleged "sufficient grounds for release, [the] relevant facts
are in dispute, and the state courts did not hold a full and fair evidentiary hearing"
on his claims.  *Id.* at 610-11 (quoting *Stanford v. Parker,* 266 F.3d 442, 459 (6th
Cir. 2001), *cert. denied,* 537 U.S. 831 (2002)).

First, in this case, it is clear from the record presented that petitioner was not
afforded a full and fair evidentiary hearing on his ineffective assistance of counsel
claims in the state courts.  The trial court denied the claims alleged in petitioner's
motion for new trial without holding an evidentiary hearing, and that decision was
affirmed on direct appeal.  Moreover, petitioner's claims raised in his state post-
conviction petition were rejected without a hearing on procedural grounds.

Secondly, the undersigned concludes that petitioner has alleged facts, which
if true, could entitle him to habeas relief.

As the Ohio Court of Appeals recognized in its direct appeal decision
addressing petitioner's ineffective assistance of counsel claims (*see* Doc. 3, Ex. 9,
pp. 5-6), to establish a colorable ineffective assistance of counsel claim, the
prisoner must allege facts showing: (1) his trial counsel made such serious errors
that he was not functioning as the "counsel" guaranteed by the Sixth Amendment;
and (2) counsel's deficient performance prejudiced the defense.  *See Strickland v.
Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must demonstrate that
his counsel's representation fell below an objective standard of reasonableness
based on all the circumstances surrounding the case.  *See id.* at 688.  In
determining whether or not counsel's performance was deficient, the Court must
indulge a strong presumption that the challenged conduct fell within the wide range
of reasonable professional assistance.  *See id.*

Under the second "prejudice" prong of the *Strickland* test, petitioner satisfies
his burden of proof with respect to his claim challenging his counsel's conduct at

---

[8]  *See also Harries v. Bell,* 417 F.3d 631, 635 (6th Cir. 2005) (quoting *Abdur'Rahman,*
226 F.3d at 705) ("a district court does have the inherent authority to order an evidentiary
hearing even if the factors requiring an evidentiary hearing are absent").

trial by showing that a "reasonable probability" exists that, but for his counsel's alleged errors, the result of the trial would have been different, or in other words that the result of his trial would "reasonably likely have been different absent the errors." *See id.* at 694-95.  With respect to his claim challenging his counsel's pretrial conduct in failing to notify petitioner of the State's plea offer, petitioner satisfies the second part of *Strickland* test by showing that such error had a prejudicial effect on "the outcome of the plea process."  *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (applying *Strickland* to guilty plea context).  This means that in order to demonstrate prejudice based on such claim, petitioner must show a reasonable probability exists that, but for counsel's alleged error, he would have accepted the State's plea offer and would not have proceeded to trial.  *Cf. id.*; *see also Griffin v. United States,* 330 F.3d 733, 737 (6th Cir. 2003) ("The second element of the *Strickland* test in the plea offer context is that there is a reasonable probability the petitioner would have pleaded guilty given competent advice.").

The evidence presented by petitioner to the state courts in support of his motion for new trial and post-conviction petition indicates that his defense counsel's representation may have fallen below an objective standard of reasonableness under the first prong of the *Strickland* standard.  As the Ohio Court of Appeals pointed out in its direct appeal decision (*see* Doc. 3, Ex. 9, p. 7), it is well-established that a "defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies [the deficient performance prong] of the *Strickland* test." *See Griffin,* 330 F.3d at 737 & n.2 (and numerous cases cited therein); *see also Smith v. United States,* 348 F.3d 545, 552-53 (6th Cir. 2003).  Moreover, a defense counsel's failure to call key witnesses material to the defense may fall outside the wide range of reasonable professional assistance based on all the circumstances surrounding the case.

With respect to the "prejudice" component of the *Strickland* test, the undersigned further finds that, despite the Ohio courts' determination to the contrary, petitioner presented sufficient evidence to raise a colorable claim of prejudice which should have been explored more fully in the state courts.

Specifically, with respect to petitioner's claim regarding the purported failure of counsel to inform him of the State's plea offer, petitioner presented evidence that the substance of the plea offer was that petitioner would enter a guilty plea to a lesser, second-degree-felony charge of engaging in a pattern of

corrupt activity in exchange for dismissal of the remaining 22 counts, and that petitioner's acceptance of the plea offer "would have significantly reduced the possibility of any jail time in the matter." (Doc. 3, Ex. 3, "Affidavit of David Brewer" ¶7 & "Affidavit of William Hicks"). Petitioner also expressly stated in support of his motion for new trial that he "may have . . . entered a plea to the offer made, had he known about it as he would have been able to make an intelligent and informed decision about what was in his best interest." (*Id.*, Ex. 3).

The Ohio Court of Appeals found petitioner had failed to establish "prejudice" because he did not state that he "would have accepted the plea offer had it been communicated to him," and because the trial court made it clear at the hearing where counsel presented oral arguments on petitioner's motion for new trial, that it would impose a "severe sentence, which would approach the maximum sentence," if petitioner were to accept the State's plea offer. (*Id.,* Ex. 9, pp. 7-9; *see also* Ex. 4, Tr. 39-40).

Contrary to the state court's finding, petitioner was not required to demonstrate that he would have accepted the plea offer if he had know about it, but only that a "reasonable probability" exists that he would have accepted the offer. *Cf. Hill,* 474 U.S. at 59; *Griffin,* 330 F.3d at 737. In the absence of the development of a factual record regarding the details of any plea offer made by the State, petitioner's statement that he may have accepted the offer if he had been informed of it is sufficient to trigger concerns that a "reasonable probability" exists that, but for counsel's alleged error, petitioner would have pleaded guilty to only one lesser-degree racketeering charge, rather than proceed to trial on the first-degree felony charge, as well as 22 additional counts charging theft and attempted theft by deception.

A criminal defendant's repeated declarations of innocence do not prove that he would not have accepted a prosecutor's plea offer, and therefore, are not dispositive in determining the "prejudice" issue. *Griffin,* 330 F.3d at 738 (citing *North Carolina v. Alford,* 400 U.S. 25, 33 (1970), which quoted as follows from a state supreme court case: "reasons other than the fact that he is guilty may induce a defendant to so plead, . . . and he must be permitted to judge for himself in this respect"); *see also Smith,* 348 F.3d at 551-52. Moreover, the disparity between the plea offer and the defendant's potential sentence exposure in proceeding to trial on all charges constitutes "strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier

22

protestations of innocence."  *Smith,* 348 F.3d at 552 (and cases cited therein).

Here, as the state courts emphasized, the trial court made it clear that it would impose a "severe sentence" approaching the maximum if petitioner were to plead guilty to the lesser-degree racketeering charge.  However, neither the trial court nor the Ohio Court of Appeals addressed the critical issue as to whether or not there remained a disparity between a "severe sentence" imposed on conviction after pleading guilty to second-degree felony racketeering and the potential sentence exposure petitioner faced by proceeding to trial on the 23 counts charged in the indictment.

With respect to petitioner's claim stemming from his counsel's failure to call key witnesses favorable to the defense, the trial court did not address petitioner's claim stemming from counsel's failure to call as a defense witness Brandon Voelker, who served as an attorney for APF in a civil capacity in January 2001. (*See* Doc. 3, Ex. 4).  The court rejected petitioner's claim stemming from counsel's failure to call satisfied APF customers as defense witnesses because they were "somewhat cumulative" given the substantial evidence that had been introduced at trial regarding "satisfied customers."  (*Id.,* Tr. 43-44).

The Ohio Court of Appeals affirmed the trial court's decision regarding the cumulative nature of any testimony from additional witnesses called to testify as "satisfied customers" of APF, which thus failed to meet the "prejudice" prong of the *Strickland* test.  (*Id.*, Ex. 9, p. 11).  The court also briefly addressed the issue pertaining to Brandon Voelker, determining in a summary fashion that petitioner had not demonstrated a "reasonable probability" exists that had Voelker been subpoenaed by counsel to testify at trial as to his consultations with petitioner about APF's problems for the first time during the week of January 15, 2001, "the outcome of the [trial] proceeding would have been different."  (*Id.,* p. 11).

Respondent has not filed a transcript of the trial proceedings with the Court. Therefore, the undersigned is unable to assess the reasonableness of the state courts' finding of lack of "prejudice" with respect to petitioner's claim stemming from counsel's failure to call various satisfied APF customers as defense witnesses.[9]

---

[9]  In a separate Order issued this date, the undersigned has ordered respondent to file a copy of the trial transcript with the Court.  The Court may find, upon review of the transcript, that the testimony of additional satisfied APF customers would be merely cumulative as the Ohio courts found.  Therefore, it may be that this particular allegation of ineffectiveness may not need

Moreover, petitioner submitted Brandon Voelker's affidavit as an attachment to his state post-conviction petition, which triggers concerns that Voelker indeed would have provided "critical" testimony favorable to petitioner's defense of lack of criminal intent, as David Brewer had averred in support of petitioner's motion for new trial. (*See id.,* Ex. 3, "Affidavit of David Brewer" ¶13; Ex. 14, attached Ex. O). In rejecting petitioner's claims for post-conviction relief, the Ohio courts found that Voelker's affidavit was "cumulative to information already contained in the record which was previously considered on direct appeal." (*Id.,* Ex. 17, p. 9; Ex. 21, p. 5). However, contrary to the state courts' determination, it appears from the record before this Court that Voelker's affidavit presents additional, significant information about Voelker's willingness to testify on petitioner's behalf at trial without the issuance of a subpoena, as well as the substance of the testimony he would have given to prove lack of criminal intent on petitioner's part "to take money and not perform on the contracts" underlying the criminal charges against petitioner.

In sum, the undersigned concludes that based on the present record, petitioner has raised colorable claims that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial attorney failed to inform him of a plea offer extended by the State and "failed to call witnesses and introduce evidence supporting innocence." (*See* Doc. 1, p. 5). The undersigned further concludes that because the state courts did not afford petitioner a full and fair evidentiary hearing on these ineffective assistance of counsel claims, the material facts have not been sufficiently developed for the Court to adequately assess the merits of such claims.

Accordingly, it is **RECOMMENDED** that the Court exercise its discretion to order that an evidentiary hearing be held, wherein the State and petitioner's trial counsel are provided the opportunity to respond to petitioner's evidence in support of his claims that his counsel was ineffective in failing to notify him of the State's plea offer and in failing to call Brandon Voelker and various satisfied APF customers as defense witnesses at trial. *See* Rule 8, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

---

to be explored to a great extent at the evidentiary hearing recommended herein.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ineffective assistance of trial counsel claim alleged in the instant petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1), challenging petitioner's conviction on the ground that defense counsel prevented petitioner from exercising his right to testify at trial, be **DENIED** with prejudice.

2. An order be issued remanding the matter for evidentiary hearing before the undersigned magistrate judge on petitioner's remaining ineffective assistance of counsel claims stemming from defense counsel's alleged failure to notify petitioner of a plea offer extended by the State, and failure to call certain witnesses to testify for the defense at trial.

3. A certificate of appealability should not issue with respect to the claim for relief which this Court has concluded is waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[10]

4. With respect to any application by petitioner to appeal *in forma pauperis* based solely on the claim found to be barred from review on waiver grounds, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting that portion of the Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis*

---

[10] Based on the finding that the first prong of the *Slack* standard has not been met in this case, the Court need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his waived claim for relief. *See Slack*, 529 U.S. at 484. However, it is noted that under the second-prong of *Slack*, petitioner has never set forth the substance of any testimony he would have given at trial that arguably would have benefitted the defense; it thus appears that he has not met his burden of showing as required under *Strickland*, 466 U.S. at 694-95, that a reasonable probability exists that the result of his trial would have been different if he had testified in his own defense at trial. *Cf. Underwood v. Massie*, 75 Fed.Appx. 747, 748-89 (10th Cir. Sept. 25, 2003) (not published in Federal Reporter) (affirming denial of petitioner's claim that her trial counsel "stood in the way" of her asserting her right to testify, in part because petitioner failed to allege "how the absence of her testimony prejudiced her defense").

upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  6/20/07               s/Timothy S. Black
       cbc                   Timothy S. Black
                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

_____

William Hicks,
     Petitioner,

                                      Case No. 1:05cv774

        v.                             (Spiegel, S.J.; Black, M.J.)

Deb Timmerman-Cooper,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).